## Addlespurger v. Addlespurger

C.P. of Allegheny County, no. FD 04-4718-003.

*Julie Addlespurger,* pro se.
*Arthur Bloom,* for defendant Steven Addlespurger.
*Ronald H. Heck,* for additional defendants Donald Addlespurger and Auto Driveway Company.

WECHT, *J.,* October 14, 2008—Plaintiff Julie Addlespurger (Wife) appeals from this court's order dated July 25, 2008. That order vacated this court's previous orders that had stayed the sheriff's sale of the marital residence. In accordance with Pa.R.A.P. 1925, this opinion sets forth the court's reasons for the July 25, 2008 order.[1]

## BACKGROUND AND PROCEDURAL HISTORY

Wife and defendant Steven Addlespurger (Husband) married on August 7, 1987. They separated in July 2004.

---

1. At 1401 WDA 2008, Wife also has appealed a separate July 25, 2008 order. That other order disposed of the parties' economic claims. On August 26, 2008, this court granted Wife's and Husband's requests

Wife filed her divorce complaint on September 2, 2004. Over its multiyear course, this action has been rife with frequent, extensive, and contentious litigation of many issues, both in this court and in the Superior Court.[2]

On July 6, 2007, Wife, then represented by counsel, presented a motion requesting a stay of a scheduled sheriff's sale of the marital residence pending equitable distribution. Parkvale Savings Bank had foreclosed on its line of credit collateralizing the marital residence, and appeared through counsel to oppose Wife's motion. Husband appeared without counsel, and did not oppose the sale. On July 11, 2007, this court granted Wife's request and stayed the sale pending the outcome of equitable distribution. On July 17, 2008, this court issued a clarifying order, at the Bank's request, ruling that the sale was postponed.

This court then attempted once again to move this case forward to dispose of the parties' economic claims. An equitable distribution conciliation was scheduled for August 13, 2007 and then rescheduled for August 23 at the request of counsel for additional defendants. It was later rescheduled for August 27. Following conciliation, a pretrial conference was scheduled for December 20,

---

for reconsideration of that order. As such, Wife's appeal at 1401 WDA 2008 is inoperative. Pa.R.A.P. 1701(b)(3).

2. Previous appeals in this action are docketed at: 2241 WDA 2007 (appeal pending); 2032 WDA 2006 (appeal quashed); 2012 WDA 2006 (appeal quashed); 1952 WDA 2006 (appeal quashed); 1852 WDA 2006 (appeal quashed); 936 WDA 2006 (appeal quashed); 91 WDA 2006 (appeal quashed); 90 WDA 2006 (appeal quashed); 89 WDA 2006 (trial court affirmed); 2231 WDA 2005 (appeal quashed); 1935 WDA 2005 (appeal quashed); and 90 WDM 2005 (application for relief denied).

2007. In December 2007, the Bank presented a motion for reconsideration. A January 23, 2008 order disposed of the motion for reconsideration and scheduled trial for March 17, 18 and 24. Trial proceeded on March 17, March 18, March 24, June 16, June 18, June 24, July 1, July 7, and concluded on July 15. One hundred forty-five exhibits were entered into evidence. An order disposing of the parties' economic claims issued on July 25, 2008.

On July 14, 2008, the Bank again presented a motion requesting that the stay of the sheriff's sale be lifted. This court took the motion under advisement, and issued an order on July 25, 2008 that vacated its July 11 and July 17, 2007 orders, thereby lifting the stay.

On August 1, 2008, Wife presented a motion in the civil division, docketed at GD 05-28310, requesting an additional stay. The motion was granted by the civil division motions judge, and the sale was stayed until November 3, 2008.

Nonetheless, on August 22, 2008, Wife, proceeding pro se, filed a notice of appeal of this court's July 25 order lifting the stay. On August 25, 2008, in accordance with Pa.R.A.P. 1925(b), this court ordered Wife to file a concise statement of errors complained of in the appeal. On September 16, 2008, the twenty-second day after the date of the order, Wife filed a statement.

*Issues Raised on Appeal*

In her Pa.R.A.P. 1925(b) statement, Wife averred as follows:

"(1) Did the lower court error [sic] and/or abuse its discretion when it vacated all previous orders of court

staying the sheriff sale on the marital residence (thereby permitting Parkvale to continue with the sale) knowing a final distribution of this marital asset was not issued in its equitable distribution ruling of July 25, 2008? Yes

"(2) Did the lower court error [sic] and/or abuse its discretion when it vacated all previous orders of court staying the sheriff sale on the marital residence (on July 25) knowing the occupant/custodial parent would then only have 10 days/five business days notice to address the situation before the sheriff sale occurred on August 4, 2008? Yes"

## Discussion and Analysis

In deciding to grant Wife's original stay motion, this court gave close consideration to the case of *Kronz v. Kronz,* 393 Pa. Super. 227, 574 A.2d 91 (1990). In *Kronz,* our Superior Court indicated that a family court had neither the power to alter or delay the rights of creditors in order to facilitate equitable distribution, nor jurisdiction over a secured creditor who was not a third party involved in or concerned with the disposition of the divorce. *Id.* at 233, 574 A.2d at 93-94. Instead, the court "in which the execution proceedings are pending has an inherent power to stay the proceedings." *Id.* at 233, 574 A.2d at 94. However, the *Kronz* court's principal concern appeared to be that the family court had stayed execution indefinitely. *Id.* at 234, 574 A.2d at 94-95. The Superior Court found that, in so doing, the lower court had impaired the creditor's contractual rights. *Id.* at 234, 574 A.2d at 95. The Superior Court suggested that the lower court had failed properly to balance the interests of the creditor and debtor because the court had

not made any provisions to ensure a prompt sale of the property nor any provisions to manage and maintain the property, all of which impaired the substantive rights of the creditor. *Id.*

This court determined that Wife would be damaged if the sheriff's sale occurred before equitable distribution. Wife represented to this court at argument that she was current on the first mortgage encumbering the home, a loan from Dollar Bank. Additionally, Wife contended that Husband was responsible for the majority of the line of credit obligation (unpaid since 2005) upon which the Bank had foreclosed, and that the additional defendants also were responsible for payment. Prior to development of an evidentiary record at trial on economic claims, this court could not properly evaluate Wife's contentions. Because the Bank had obtained its foreclosure, it appeared to be protected, at least for that time. As Wife was living in the marital residence with the parties' two minor children, this court was confident that the residence would be maintained. The challenge, then, was to craft an order that protected the Bank under *Kronz,* while recognizing and minimizing the risk to Wife.[3]

In *Kronz,* the Superior Court was concerned that undue delay would affect the creditor's rights. There was a similar concern here. Clearly, the stay could not be of indefinite duration. The parties had failed to move this case forward to equitable distribution. Without such forward motion, to allow a stay until equitable distribution might have been tantamount to a de facto stay of

---

3. See this court's memorandum and order, dated July 11, 2007, and memorandum and order, dated January 23, 2008, both of which are appended to this opinion. [Not published herein.]

indefinite duration. Yet, to put a specific expiration date on the stay would only have encouraged Husband to continue to delay equitable distribution, given his apparent wish that Wife be evicted from the property.

This court's July 11, 2007 order attempted to balance the interests of all involved. It moved equitable distribution along by setting a date for conciliation, thereby ensuring that the stay was not indefinite. It imposed enough of a potential penalty to encourage Husband to comply, and it allowed Wife some protection pending the outcome of equitable distribution.

In its argument for reconsideration in January 2008, the Bank asserted that the stay was essentially indefinite because there was no deadline for equitable distribution to occur and because the parties, particularly Husband, had a history of dragging out the proceedings. The Bank further argued that, as long as the stay remained in place, fees and costs were accruing steadily, making it less likely that the parties ultimately would retain any equity in the home, and less likely that foreclosure ultimately could satisfy the parties' obligation to the Bank.

In an attempt to protect all the parties' interests, and to keep the stay from becoming a de facto indefinite delay, this court issued its January 23, 2008 order setting the dates for the equitable distribution trial in March 2008. Unfortunately, the parties' expectations for length of trial proved unrealistic, and the proceeding dragged out over nine days until July 2008.

At the time this court issued its July 25, 2008 order, the equitable distribution trial had concluded, and an order disposing of economic claims was issued. At that point, there was no longer a need to protect Wife's inter-

est pending equitable distribution, because distribution was now occurring. At that time, following development of a full evidentiary record and issuance of fact-findings and legal conclusions, it finally was clear that there was very little to the marital estate. There was no pool of money that Husband was withholding that could suffice to cure the foreclosure. The additional defendants were found not to be part of the marital estate, and were found not to be responsible for the payments to the Bank. Wife was in the best financial position to attempt to cure the foreclosure. But it was not clear that Wife would be able to do so. The Bank argued that there essentially was no equity in the property once all the fees and costs were considered. No payments had been made on the line of credit since 2005. The elder child had reached 18 and graduated from high school. As the Bank no longer had any protection, and with the property now well under-water, and with the interests of Wife and Husband having been adjudicated through equitable distribution, there no longer was any need (or good cause) for this court to continue to stay the sheriff's sale.

The marital residence was part of the final distribution in the July 25, 2008 equitable distribution order. Due to the special circumstances of this encumbered property, the court deemed it inequitable to award either party the equity in the home, inasmuch as it appeared unlikely that either party would be able to keep the home or realize any equity from it. Therefore, this court provided for the various specific eventualities that might occur, to wit, either the home would be sold at sheriff's sale, or one of the parties would cure the foreclosure. While there was some uncertainty as to whether either party would be able to retain the home, there was no uncertainty as to

how any proceeds or interests would be divided among the parties regardless of the home's disposition.

Wife also complained that the July 25, 2008 order did not provide her with enough time to "address the situation" prior to the scheduled sheriff's sale. Wife has had ample time since the October 2005 complaint in mortgage foreclosure and the February 2007 order entering judgment in mortgage foreclosure to "address the situation." Wife has continued to make no payments since before the complaint was filed, despite having full possession and enjoyment of the marital residence. Further, this court's orders have made clear that the sale was stayed only pending equitable distribution. Wife was on notice that, once equitable distribution was concluded, the sale would no longer be stayed. Finally, it is disingenuous for Wife to complain that there was not enough time when Wife was able to come into civil division motions court and get a new stay after this court's July 25 order.

Given the need to protect the rights of all those involved, including not only the defaulting parties but also the lender forced involuntarily to finance delay, and given that equitable distribution had concluded, this court's July 25 order was appropriate.